## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LUCAS MCLAUGHLIN** | **CIVIL ACTION** |
| **VERSUS** | **NO.  15-1259** |
| **SANDY MCCAIN, WARDEN** | **SECTION  "C"(4)** |

### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.    Factual Background

The petitioner, Lucas McLaughlin ("McLaughlin"), is a convicted inmate currently incarcerated in the Dixon Correctional Institute in Jackson, Louisiana.[2]  On July 18, 2011, McLaughlin was charged by Bill of Information in Washington Parish for second degree battery.[3]

At the time of the incident, McLaughlin was serving a fifteen-year sentence for a prior armed robbery conviction.[4]  On May 24, 2011, while incarcerated in the B.B. "Sixty" Rayburn Correctional

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 6.

[3]St. Rec. Vol. 1 of 2, Bill of Information, 7/18/11; Rec. Doc. No. 6-1, p. 6.

[4]St. Rec. Vol. 1 of 2, Trial Court Order and Reasons, p. 10, 10/14/13.

Center, McLaughlin was involved in a fight with a fellow inmate, Melvin Stout, and Stout suffered a facial fracture as a result.[5]  McLaughlin initially entered a plea of not guilty to the charge.[6]

However, on November 14, 2012, McLaughlin withdrew his former plea and entered a plea of guilty pursuant to a plea agreement reached with the State.[7]  The Court thereby sentenced McLaughlin to serve three (3) years in prison at hard labor to run consecutive to the sentence he was then serving and with credit for time served.[8]

McLaughlin's conviction and sentence became final thirty (30) days later, on December 14, 2012, because he did not seek reconsideration of the sentence and no further direct review was available.  La. Code Crim. P. art. 914;[9] *Butler v. Cain*, 533 F.3d 314, 317 (5th Cir. 2008) ("[A] conviction becomes final when the time for seeking further direct review in the state court expires.") (quoting *Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003)).

In the meantime, on December 6, 2012, McLaughlin filed several pro se motions including a motion seeking to set aside his plea of guilty.[10]  The state trial court denied the motion on

---

[5]*Id.*, p. 1.

[6]St. Rec. Vol. 1 of 2, Minute Entry, 7/18/11; Minute Entry, 8/8/11.

[7]St. Rec. Vol. 1 of 2, Plea Minutes, 11/14/12; Plea Transcript, 11/14/12.  The agreement included the State's representation that no multiple bill would be filed in the case.

[8]St. Rec. Vol. 1 of 2, Plea Minutes, 11/14/12; Plea Transcript, 11/14/12.

[9]Louisiana law requires a criminal defendant to move for leave to appeal within thirty(30) days of the order or judgment being appealed or a ruling on a timely motion to reconsider a sentence. La. Code Crim. P. art. 914 (as amended La. Acts 2003, No. 949, § 1).  Failure to move timely for appeal under Art. 914 rendered the conviction and sentence final at the expiration of that period. *State v. Counterman*, 475 So.2d 336, 338 (La. 1985).

[10]St. Rec. Vol. 1 of 2, Motion to Set Aside Plea of Guilty, 12/11/12 (dated "__ day of December, 2012); Memorandum in Support, 12/11/12 (undated); *see also*, Rec. Doc. No. 6-1, pp. 65-66 (dated December 6, 2012).

December 17, 2012 without stated reasons.[11]  McLaughlin did not seek timely review of the denial of this motion.[12]

Instead, forty-four (44) days later, on January 31, 2013, he signed and submitted a writ application to the Louisiana First Circuit Court of Appeal challenging the denial of the motion.[13] The Court denied the writ application on April 8, 2013, because McLaughlin failed to include the relevant documentation required to support the claims raised in the motion to set aside the guilty plea.[14]  McLaughlin did not seek review of this ruling.

On June 6, 2013, McLaughlin signed and submitted a form application for post-conviction relief to the state trial court alleging that his plea resulted from the denial of effective assistance of counsel.[15]  The court staff sent a letter to McLaughlin advising him that his application could not move forward until he submitted certain documentation, including a notarized attestation verifying the veracity of the contents of the application.[16]  On July 18, 2013, McLaughlin provided the

---

[11]St. Rec. Vol. 1 of 2, Trial Court Order, 12/17/12.

[12]A writ application must be filed within 30 days after issuance of the order being reviewed.  La. App. Rule 4-1.

[13]St. Rec. Vol. 2 of 2, 1st Cir. Writ Application, 2013-KW-0203, 2/1/13 (dated 1/31/13).

[14]St. Rec. Vol. 1 of 2, 1st Cir. Order, 2013-KW-0203, 4/8/13.

[15]*See* St. Rec. Vol. 1 of 2, Application for Post-Conviction Relief, 6/18/13 (dated 6/6/13).

[16]St. Rec. Vol. 1 of 2, Letter to McLaughlin, 6/25/13.

notarized affidavit, dated July 14, 2013, to support the application.[17] McLaughlin also supplemented his application with additional arguments to support his claim of ineffective assistance of counsel.[18]

In the meantime, on July 24, 2013, McLaughlin submitted a separate motion requesting that his sentences be made to run concurrently.[19] The Court denied the motion without stated reasons on September 5, 2013.[20] McLaughlin did not seek review of this ruling.

Thereafter, on October 14, 2013, the state trial court denied McLaughlin's application for post-conviction relief finding that his claims were without merit under the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).[21] The Louisiana First Circuit denied McLaughlin's related writ application without stated reasons on March 24, 2014.[22] On April 4, 2014, McLaughlin submitted a request for rehearing which the Court denied on April 29, 2014.[23]

On May 26, 2014, McLaughlin signed and submitted a writ application to the Louisiana Supreme Court seeking review of his ineffective assistance of counsel claim. The Court denied the writ application on March 13, 2015, without stated reasons.

---

[17]St. Rec. Vol. 1 of 2, Notarized Affidavit Return, 7/18/13. In spite of this, another letter was sent to McLaughlin advising him to submit the notarized affidavit. St. Rec. Vol. 2 of 2, Letter to McLaughlin, 8/2/13.

[18]St. Rec. Vol. 1 of 2, Supplemental Brief, 8/18/13 (dated 8/5/13); Supplemental Application, 9/10/13 (dated 9/5/13).

[19]St. Rec. Vol. 1 of 2, Motion Requesting Concurrent Sentence, 7/24/13 (undated).

[20]St. Rec. Vol. 1 of 2, Trial Court Order, 9/5/13.

[21]St. Rec. Vol. 1 of 2, Trial Court Order and Reasons, 10/14/13.

[22]St. Rec. Vol. 2 of 2, 1st Cir. Order, 2013-KW-1992, 3/24/14; 1st Cir. Writ Application, 2013-KW-1992, 11/13/13 (dated 11/12/13).

[23]St. Rec. Vol. 2 of 2, 1st Cir. Order, 2013-KW-1992, 4/29/2014; Rec. Doc. No. 6-1, pp. 122-127 (dated 4/4/14).

Shortly thereafter, on March 23, 2015, McLaughlin signed and submitted to the state trial court another motion seeking to withdraw his guilty plea because his prison sentencing records did not reflect that he was receiving credit for time served.[24] The Trial Court denied the motion on May 22, 2015, referencing McLaughlin's failure to exhaust administrative review procedures in La. Rev. Stat. Ann. § 15:1171 *et seq*.

## II.      Federal Habeas Petition

On June 15, 2015, the clerk of this Court filed McLaughlin's petition for federal habeas corpus relief in which he argues that his guilty plea was unconstitutional because he received ineffective assistance of counsel.[25] The State filed an answer and memorandum in opposition to the petition arguing that McLaughlin did not timely file his federal petition.[26] Alternatively, the State argues that McLaughlin's arguments are without merit and do not entitle him to federal habeas relief.

## III.      General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[27] applies to this petition, which is deemed filed in this Court by petitioner under

---

[24]St. Rec. Vol. 1 of 2, Motion to Withdraw Guilty Plea, 3/26/15 (dated 3/23/15).

[25]Rec. Doc. No. 6.

[26]Rec. Doc. Nos. 15, 16.

[27]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

the federal mailbox rule on April 13, 2015.[28]  The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and the claims must not be in "procedural default."  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

As indicated above, the State argues that McLaughlin's petition was not timely filed under the AEDPA which also resulted in a failure to properly exhaust review of his claims.  Having thoroughly reviewed the record and, after applying the mailbox rule and the appropriate law on calculating the AEDPA one-year filing period, the Court finds that McLaughlin's federal petition is timely filed.  The State's time calculation fails in its assumption that McLaughlin's request for rehearing in the Louisiana First Circuit submitted on April 4, 2014, and denied April 29, 2014, was not properly filed thereby causing his subsequent Louisiana Supreme Court writ to be untimely filed under La. S. Ct. Rule X§5.  However, the Louisiana First Circuit did not <u>refuse</u> to consider McLaughlin's rehearing application as improperly filed under La. App. R. 4-9 and/or La. App. R. 2-18.7.  Instead, the court simply denied the request with stated reasons.  With some procedural reference rejecting the pleading as improper, it must be considered timely and properly filed.  As

---

[28]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The Clerk of Court filed McLaughlin's federal habeas petition on June 15, 2015, after he corrected certain deficiencies and pauper status was granted.  McLaughlin dated his signature on the original submission on April 13, 2015.  Rec. Doc. No. 1, pp. 1, 12.  This is the earliest date appearing in the record on which he could have presented his pleadings to prison officials for mailing to the Court.

a result, the request for rehearing and the subsequent and timely Louisiana Supreme Court writ application tolled the AEDPA one-year filing period and exhausted state court review.

Therefore, affording McLaughlin every benefit of the record, a proper calculation results in the conclusion that McLaughlin allowed only 149 days of the AEDPA one-year filing period to pass after finality of his conviction on December 17, 2012, before submitting his federal petition on April 13, 2015, with the balance of the time having been tolled by properly filed state applications for post-conviction relief or other collateral review. McLaughlin's federal petition is considered timely filed and the Court will proceed to the substance of his claims.

## IV.     **Standards of Review on the Merits**

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the Court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA. The standard provides that deference be

given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485. The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, __ U.S. __, 134 S. Ct. 1697, 1706-07 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" *White*, 134 S. Ct. at 1706 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)).

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it correctly identifies the governing rule but then applies it unreasonably to the facts. *White*, 134 S. Ct. at 1706-07; *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *See Williams*, 529 U.S. at 410. The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *Id.* "'[A] federal habeas court may not issue the writ simply because that

court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, __, 131 S. Ct. 1388, 1398 (2011).

## V.     Effective Assistance of Counsel

McLaughlin alleges that he received ineffective assistance of counsel in connection with his guilty plea when counsel failed to investigate, gather witnesses, witness statements, and crucial impeachment and exculpatory materials. He argues that he told counsel that the victim, Melvin Stout, had a handmade knife and that he acted in self-defense when he struck Stout. He also provided counsel with an affidavit from another inmate, Nicholas Jarell, who stated that he saw Stout with the knife and was told by Stout that he planned to stab McLaughlin. He also claims to have had the names of four other inmate witnesses, Kendrick Peters, Michael Lott, Calvin Schmiderer, and Jason Hotard, which he provided to counsel and counsel never contacted them.

McLaughlin also complains that, when he filed a motion to have the court order the witnesses to meet with counsel, counsel withdrew the motion to force him to enter the plea. He further claims that counsel caused McLaughlin's motion for a preliminary hearing to be withdrawn, which also denied him the opportunity to call his witnesses.

McLaughlin further alleges that he was forced to accept the plea agreement to avoid a higher sentence because counsel did not prepare a defense. He also contends that counsel misrepresented the plea agreement when he led McLaughlin to believe he would receive credit for time served which would not act to increase his time in jail.

In its alternative arguments, the State contends that McLaughlin has failed to demonstrate a basis for relief and the state courts' denial of relief was not contrary to or an unreasonable application of federal law.

McLaughlin raised these arguments in his application for post-conviction relief presented to the state trial court. In the last reasoned decision, the state trial court denied relief finding the claims failed to meet either prong of the *Strickland* standard. *See Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991) (finding when the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

The issue of ineffective assistance of counsel is a mixed question of law and fact. *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012); *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010). The question for this Court is whether the state courts' denial of relief was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court.

The Supreme Court's holding in *Strickland*, 466 U.S. at 668, is the appropriate standard for judging the performance of counsel when a defendant enters a plea of guilty. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). In *Strickland*, the Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom. *See Strickland*, 466 U.S. at 697. The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992). In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Amos v. Scott*, 61 F.3d 333, 348 (5th Cir. 1995).

Applying *Strickland* under *Hill* in the context of a guilty plea, the deficiency prong is satisfied when the petitioner demonstrates that "counsel's representation fell below an objective standard of reasonableness." *Hill*, 474 U.S. at 57 (citing *Strickland*, 466 U.S. at 687-88). "[I]t is necessary to 'judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *Harrington*, 562 U.S. at 104 (citing *Strickland*, 466 U.S. at 689). "[I]t is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell*, 535 U.S. at 702 (citing *Strickland*, 466 U.S. at 689).

To prove prejudice, the petitioner must show that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Bell*, 535 U.S. at 695 (quoting *Strickland*, 466 U.S. at 694); *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999). In the context of a guilty plea, "[i]n order to satisfy . . . [*Strickland*'s] 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. Furthermore, "[t]he petitioner must 'affirmatively prove,' [and] not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 693). In this context, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen*, 131 S. Ct. at 1403 (quoting *Strickland*, 466 U.S. at. 694). This standard requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington*, 562 U.S. at 112. Thus, conclusory allegations with no showing of effect on the proceedings do not raise a constitutional issue sufficient to support federal habeas relief. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

On habeas review, the United States Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 105 (citing *Strickland*, 466 U.S. at 690). The *Harrington* Court went on to recognize the high level of deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and §2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.  The *Strickland* standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.*, at 105 (citations and quotation marks omitted).

Thus, scrutiny of counsel's performance under § 2254(d) therefore is "doubly deferential." *Cullen*, 131 S. Ct. at 1403 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).  The federal courts must take a "highly deferential" look at counsel's performance under the *Strickland* standard through the "deferential lens of § 2254(d)."  *Id.* (quoting *Knowles*, 556 U.S. at 121 n.2) (citing *Strickland*, 466 U.S. at 689).

As outlined above, McLaughlin alleges that his counsel did not properly investigate the information given to him to support the self-defense theory or interview the witnesses who could have corroborated the defense.  It is well settled that a habeas petitioner cannot show prejudice with respect to a claim that counsel failed to investigate a defense without adducing what the investigation would have shown.  *Diaz v. Quarterman*, 239 F. App'x 886, 890 (5th Cir. 2007) (citing *Strickland*, 466 U.S. at 696 (recognizing that some evidence is required to show that "the decision reached would reasonably likely have been different")).  Instead, to prevail on such a claim, the petitioner must provide factual support as to what exculpatory evidence further investigation would have revealed.  *See Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir. 1998); *see also Brown v. Dretke*, 419 F.3d 365, 375 (5th Cir. 2005); *Davis v. Cain*, No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008) (order adopting referenced Report and Recommendation).

13

Here, McLaughlin alleges that, in the eyewitness affidavit, inmate Jarell stated that he saw Stout with a handmade knife and Stout said he had planned to use it on McLaughlin. The unverified affidavit, which was not notarized, was wholly discredited by state trial court on post-conviction review.[29] McLaughlin, nevertheless, contends that all of this information was in counsel's possession and counsel needed only to investigate it and corroborate it. According to the record and the findings of the state trial court, however, defense counsel engaged in open file discovery of all of the materials in the possession of the State. This included a DVD video recording of the actual fight between McLaughlin and Stout. As the state trial court concluded, counsel adjusted the trial strategy and advised McLaughlin to enter the plea after viewing the video. The Court indicated that the video failed to confirm McLaughlin's representations that he acted in self-defense. This also would have negated the need for counsel to pursue the numerous pro se motions filed by McLaughlin which were aimed at gathering information regarding the alleged knife and the self-defense theory.

For these reasons, the record demonstrates that counsel did investigate and engage in discovery necessary to prepare a defense. Based on the evidence he reviewed, however, counsel determined that the best course for McLaughlin was to accept the plea offer to a lesser sentence than he faced had he gone to trial. McLaughlin has not pointed to any tangible or credible exculpatory information that counsel could have obtained from further investigation or from contacting the other inmate witnesses after conducting his independent review of the State's evidence. McLaughlin's

---

[29]St. Rec. Vol. 1 of 2, Trial Court Order and Reasons, p. 8, 10/14/13.

otherwise unsupported arguments provide no reason to undermine the deference due to his counsel's strategy decisions or the denial of relief on this issue by the state courts under *Strickland*.

Furthermore, McLaughlin has not established that counsel misled him with regard to the sentencing parameters as an inducement to enter the plea.  Under a broad reading, McLaughlin claims that the sentence was not supposed to extend his discharge date beyond that of his prior sentence after subtracting credit for time served on the second degree battery charge.  As determined by the state trial court, McLaughlin was granted credit for time served as allowed and as would be calculated by the Louisiana Department of Corrections ("DOC").  This is confirmed by the sentencing transcript.[30]  The transcript also indicates that no specific discharge date was discussed during the plea or sentencing.  Instead, the state trial court clearly advised McLaughlin that the DOC officials would have to calculate the credit for time served in light of the consecutive sentences and "let [McLaughlin] know what those numbers are."[31]  Although McLaughlin is not satisfied with the calculations made by the DOC, counsel is not responsible for sentencing calculations outside of his control.  In addition, the record shows that McLaughlin was advised and indicated that he understood that his sentences were to run consecutively, one after the other, and the second sentence for this charge would only be reduced by credit for time served.  There is no indication in the record, and he has not established that, he was promised or misled into believing that the entire three year sentence for second degree battery would be negated by the credit for time served or in anyway be completed prior to or contemporaneously with the sentence he was already serving.

---

[30]St. Rec. Vol. 1 of 2, Plea Transcript, pp. 8-9, 11/14/12.

[31]*Id.*, p. 9.

At that time, as determined by the state court, the avoidance of a multiple bill was the main impetus behind the plea agreement. As calculated by the state trial court, McLaughlin's sentencing exposure with a multiple bill may have increased to life without benefit of parole, probation, or suspension of sentence.[32] The Court found this to be a "significant benefit" in McLaughlin's decision to enter the guilty plea.[33]

This Court recognizes that McLaughlin alleges that, had he known he would spend additional time in jail, he would have chosen to go to trial to assert the self-defense theory. For the reasons already addressed, however, McLaughlin has not presented any credible evidence to any court that a self-defense theory was supportable. Instead, the record indicates that counsel reasonably advised McLaughlin to enter the plea after examining the video recording of the fight, reviewing the prison officials' statements and records about the fight, and receiving a plea offer that substantially reduced McLaughlin's sentencing exposure. While McLaughlin alleges he would have chosen to go to trial, he has not proven any prejudice resulting from counsel's actions or advise regarding the plea agreement. *See Day*, 566 F.3d at 536 (quoting *Strickland*, 466 U.S. at 693).

Based on the foregoing, McLaughlin has failed to establish that counsel's performance was deficient or prejudicial. The state courts' denial of relief on this issue was not contrary to or an unreasonable application of *Strickland*.

---

[32]St. Rec. Vol. 1 of 2, Trial Court Order and Reasons, p. 2, 10/14/13.

[33]*Id.*

### VI.    Recommendation

For the foregoing reasons, it is **RECOMMENDED** that McLaughlin's petition for the issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[34]

New Orleans, Louisiana, this 20th day of November, 2015.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[34]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.